UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Chambers of
Leda Dunn Wettre
United States Magistrate
Judge

Martin Luther King Federal
Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101
(973) 645-3574

October 27, 2017

Re: *Gallagher v. Ocular Therapeutix, Inc., et al.*
<u>Civil Action No. 17-5011 (SDW) (LDW)</u>

*Caraker v. Ocular Therapeutix, Inc., et al.*
<u>Civil Action No. 17-5095 (SDW) (LDW)</u>

*Kim v. Ocular Therapeutix, Inc., et al.*
<u>Civil Action No. 17-5704 (SDW) (LDW)</u>

## <u>LETTER OPINION & ORDER</u>

Dear Counsel:

Before the Court is the motion of defendants Ocular Therapeutix, Inc. ("Ocular"), Amarpreet Sawhney, George Migausky, Andrew Hurley, and Eric Ankerud to transfer the above-captioned actions to the United States District Court for the District of Massachusetts. (Civ. A. No. 17-5011, ECF No. 27).[1] Lead Plaintiff Movant Khaled Ramadan opposes transfer at this time. (ECF No. 33). The motion is **GRANTED** for the reasons set forth below.[2]

### I. Background

These three actions are federal securities fraud class actions brought on behalf of persons and entities who purchased or acquired defendant Ocular's publicly traded securities during certain specified periods. Ocular develops and commercializes therapies for eye diseases and conditions. (Compl., ECF No. 1 at ¶ 7). Its prospective lead product, not yet approved by the United States Food and Drug Administration

---

[1] Unless indicated otherwise, all ECF citations in this Letter Opinion & Order refer to the filings in *Gallagher v. Ocular Therapeutix, Inc, et al.*, Civ. A. No. 17-5011.

[2] The Court decided this motion without oral argument, pursuant to Federal Rule of Civil Procedure 78.

("FDA"), is DEXTENZA. (*Id.* ¶ 17). Ocular is incorporated in Delaware and has its corporate headquarters and principal place of business in Bedford, Massachusetts. (Declaration of Kathleen Theriault ("Theriault Decl."), ECF No. 27-2 ¶ 3). Its sole manufacturing facility is in Massachusetts. (*Id.*). The individual defendants are current or former Ocular executives who work or reside in Massachusetts. (*Id.* ¶ 4, Compl. ¶¶ 8-11).

Plaintiffs generally allege that the FDA found issues during inspections of Ocular's Massachusetts manufacturing facility that could prevent FDA approval of DEXTENZA. Ocular allegedly made public statements that were false or misleading as to these issues or failed to disclose them. (Compl. ¶¶ 19-22). Plaintiffs allege that when the full extent of the manufacturing issues became public, the price of Ocular shares fell and plaintiffs suffered damages. (*Id.* ¶¶ 23-26).

## II. Procedural History

Plaintiff Thomas Gallagher, a resident of New Jersey (ECF No. 1-2), filed the first of these putative class actions in July 2017. Plaintiffs Dylan Caraker and Shawna Kim filed separate putative class actions based on the same underlying allegations shortly thereafter. (Civ. A. Nos. 17-5095 and 17-5704).[3] Plaintiffs allege violations of § 10(b), Rule 10b-5, and § 20(a) of the Securities Exchange Act of 1934. (Compl. ¶¶ 1-2, 36-51).

On September 5, 2017, Gallagher moved for appointment as lead plaintiff. (ECF No. 13). On the same day, two groups of non-parties and one non-party individual moved for the same relief: (1) the "Ocular Therapeutix Investor Group"; (2) the "Ocular Investor Group"; and (3) Khaled Ramadan.[4] (ECF Nos. 16, 17, 20). Gallagher subsequently filed a notice of non-opposition to the other lead plaintiff motions. (ECF No. 23).

On September 20, 2017, defendants filed identical motions in each of these three actions for transfer to the District of Massachusetts under 28 U.S.C. § 1404(a). (ECF No. 27). They request that the Court rule on their application for transfer before ruling on the pending lead plaintiff motions, in order "to afford the District Judge who will ultimately preside over this matter the opportunity to decide the lead plaintiff motions." (ECF No.

---

[3] Caraker resides in Indiana, and Kim resides in Arizona. (Civ. A. Nos. 17-5095, ECF No. 1-2; 17-5704, ECF No. 1-2).

[4] Non-parties Osei Peters and Glenn Stephenson also filed lead plaintiff motions, but they later withdrew them. (ECF Nos. 18, 19, 21, 26). In any event, defendants submitted a declaration stating that Peters and Stephenson consent to transfer. (ECF No. 34-1 ¶ 2). Neither Caraker nor Kim moved to be appointed lead plaintiff.

27-1 at 1). Gallagher, the Ocular Therapeutix Investor Group, and the Ocular Investor Group all consent to transfer and to defendants' request that the Court decide the transfer motion first. (Declarations of Ryan Chabot, ECF Nos. 27-3 ¶ 3, 34-1 ¶¶ 2-3).[5]

Non-party lead plaintiff movant Ramadan does not consent to transfer. He opposes the motion, arguing that the Court should rule on the lead plaintiff motions first and then allow the lead plaintiff selected by the Court to decide whether to consent to transfer. (ECF No. 33). He also argues that the § 1404(a) factors overall weigh against transfer at this stage of the action.

### III. Analysis

#### A. The Order of Decision of the Motions

The Court first addresses Ramadan's contention that it should decide the lead plaintiff motions before ruling on the transfer motion. The Court determines that the transfer motion should be decided first.

As an initial matter, the parties cite no authority (and the Court is aware of none) that prescribes an order of priority in deciding concurrently pending lead plaintiff and transfer motions, in contrast with certain groups of motions in which there is a relatively clear order of priority. *Cf. Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577-78 (1999) (noting federal courts generally determine issues relating to jurisdiction before reaching merits issues). Therefore, the decision as to which motion to address first is a matter of discretion that falls within the Court's inherent power to manage its docket.

In the exercise of this discretion, the Court views the selection of a lead plaintiff as a decision that is more appropriately made by the court that ultimately will preside over the litigation. This is not only because the selection of a lead plaintiff may have a significant effect on the conduct of the litigation, but also because the selection of a lead plaintiff may turn in some respects on the application of law of the District or Circuit in which the presiding court sits. While the Private Securities Litigation Reform Act of 1995 establishes the process for appointing a lead plaintiff, the application of its provisions to the issues presented by lead plaintiff motions often is informed by District or Circuit precedent. *See, e.g., Roofers' Pension Fund v. Papa*, Civ. A. No. 16-2805 (MLC), 2017 WL 1536222 (D.N.J. Apr. 27, 2017) (relying extensively on Third Circuit precedent in deciding contested lead plaintiff motions). As this Court is within not only a different

---

[5] Plaintiffs Caraker and Kim have not opposed the motion or submitted any position on the order in which the Court should decide the motions.

District but a different Circuit than the proposed transferee court, the precedent applicable to the lead plaintiff motions may well be different. Indeed, Ramadan acknowledges this by noting that the District of Massachusetts may require rebriefing of the lead plaintiff motions under its court's law upon transfer. (ECF No. 33 at 7 ("If this case were transferred, the Massachusetts court would need to familiarize itself with the relevant Massachusetts case law, and may even require the movants to re-brief the lead plaintiff motions under District of Massachusetts law.")).

It therefore seems to the Court unduly preemptive for it to decide the contested lead plaintiff motions under this District's and Circuit's precedent before determining whether the litigation should proceed here or in the District of Massachusetts. The court that will ultimately preside over the litigation should select the lead plaintiff, and which court that will be turns on the outcome of the transfer motion. The Court does not view this interest as outweighed by Ramadan's contention that in the absence of a lead plaintiff, the putative class is not adequately represented. Nor does it view as significant that this Court has acquired some basic familiarity with the cases during their short pendency in this District.

To the extent that Ramadan further argues that the selection of a lead plaintiff may impact the outcome of the transfer motion, the Court disagrees. It addresses these arguments below in assessing the transfer motion.

### B. The Transfer Motion

Turning now to the transfer motion, the Court notes that a determination as to whether to transfer a case is within its sound discretion. *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The Court employs a two-part analysis in evaluating a § 1404(a) motion. First, it determines "whether the transferee district has proper jurisdiction and venue, such that the case could have been brought in the transferee district in the first instance." *Telebrands Corp. v. Mopnado*, Civ. A. No. 14-7969 (JAD), 2016 WL 368166, at *10 (D.N.J. Jan. 12, 2016). If jurisdiction and venue would be proper in the proposed district, the court next must engage in an "individualized, case-by-case consideration of convenience and fairness regarding which forum is most appropriate to consider the case." *Id.* (internal quotation marks omitted).

To determine which forum is most appropriate, "courts have considered many variants of the private and public interests protected by the language of § 1404(a)." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995). The private interests

4

courts consider include the following: (1) "plaintiff's forum preference as manifested in the original choice"; (2) "the defendant's preference"; (3) "whether the claim arose elsewhere"; (4) "the convenience of the parties as indicated by their relative physical and financial condition"; (5) "the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora"; and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted). Public interest factors typically include: (1) "the enforceability of the judgment"; (2) "practical considerations that could make the trial easy, expeditious, or inexpensive"; (3) "the relative administrative difficulty in the two fora resulting from court congestion"; (4) "the local interest in deciding local controversies at home"; (5) "the public policies of the fora"; and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879–80 (citations omitted).

This extensive list of factors, however, "is merely a guide, and not all the factors may be relevant or determinative in each case." *LG Elecs., Inc. v. First Int'l. Computer, Inc.*, 138 F. Supp. 2d 574, 587 (D.N.J. 2001). It is the moving party's burden to show that that the proposed forum is "not only adequate, but also more convenient than the present forum." *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 451 (D.N.J. 1999).

Here, the parties do not dispute that plaintiffs could have filed the actions in the District of Massachusetts in the first instance. Consequently, the Court will turn to the private and public interest factors for purposes of deciding the motion.

### 1. Private Interests

The private interests in this matter favor transfer. Although plaintiffs selected this forum, their choice is entitled to little or no deference for several reasons. First, Gallagher, who filed the first of these actions in New Jersey and is the only named plaintiff who resides in the State, consents to transfer. (*See* Chabot Decl., ECF No. 34-1 at ¶ 3). Second, plaintiffs Caraker and Kim (who have not opposed transfer and are not moving for appointment of lead plaintiff) do not reside in this District, so any weight attributable to their selection of this forum is also diminished. *Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 531 (D.N.J. 2000). Finally, courts in this Circuit have held that deference to a plaintiff's choice of forum is lessened considerably in securities fraud class actions. *See, e.g., Yang v. Odom*, 409 F. Supp. 2d 599, 606 (D.N.J. 2006); *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 230 (D.N.J. 1996); *Nottenkamper v. Modany*, Civ. A. No. 14-672 (GMS), 2015 WL 1951571, at *2 (D. Del. Apr. 29, 2015). This is particularly true here, where the class may consist of "hundreds or thousands of members" throughout the nation (Compl. ¶ 28) and (as found below) this forum has no meaningful connection to the action. *See Schlenker v. Immucor, Inc.*, Civ. A. No. 09-4297

5

(JD), 2009 WL 5033972, at *3 (E.D. Pa. Dec. 22, 2009) (finding plaintiff's choice of forum was entitled to "little or no deference" because "[plaintiff] is but one member of a potentially large class of individuals who could each have filed complaints in their home districts"). Thus, the Court disagrees with Ramadan's contention that the selection of a lead plaintiff will affect this "preference of the parties" factor. The only potential lead plaintiff whose choice of forum is entitled to a modicum of deference, New Jersey resident Gallagher, consents to transfer.

The factors addressing the defendants' preference and the convenience of the parties clearly favor transfer. Defendants obviously prefer Massachusetts, where Ocular's principal place of business, headquarters, and manufacturing facility at issue in this case are located, and where the individual defendants all work and/or reside. Ocular's Director of Accounting and External Reporting also certifies that the non-party Ocular employees with information relevant to plaintiffs' claims reside or work in Massachusetts. (Theriault Decl. ¶¶ 3-7). In contrast, no party-convenience factor favors retaining the action in New Jersey. Of the three plaintiffs who filed these actions, only one resides in New Jersey, and he no longer actively seeks to be named lead plaintiff. In any event, "the participation of the class representative [in securities fraud class actions] is generally minimal." *Job Haines Home for the Aged*, 936 F. Supp. at 231.

As to where the claims arose, a factor that is significant in the transfer analysis, defendants assert and Ramadan concedes that the claims arose in Massachusetts. (ECF No. 33 at 7). Securities fraud claims arise in the district from which the misrepresentations and omissions originated. *See, e.g., Huang v. Sonus Networks, Inc.*, Civ. A. No. 15-2407 (FLW) (LHG), 2016 WL 1090436, at *3 (D.N.J. Mar. 21, 2016); *Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*, Civ. A. No. 13-5805 (JLL), 2014 WL 3748214, at *6 (D.N.J. July 29, 2014) (citing cases); *Metro. Life Ins. Co. v. Bank One, N.A.*, Civ. A. Nos. 03-1882 (SDW) and 03-2784 (SDW), 2012 WL 4464026, at *6 (D.N.J. Sept. 25, 2012). Here, the alleged misrepresentations were made at Ocular's Massachusetts headquarters. (*See* ECF No. 27-1 at 6-7, Theriault Decl. ¶¶ 6-7). This factor favors transfer.

Finally, the factors relating to the convenience of witnesses and location of books and records are neutral. The *Jumara* Court explained that the convenience of the witnesses factor is relevant "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Here, defendants assert that the relevant witnesses in this matter will be "the named individual defendants and other knowledgeable Ocular employees," (ECF No. 27-1 at 7), but the convenience of those witnesses carries little weight. *See Liggett Grp. Inc.*, 102 F. Supp. 2d at 534 n.19 ("Party witnesses are presumed to be willing to testify in either forum despite any inconvenience,

6

and therefore, the relative convenience of such witnesses carries little weight."); *Gunther v. Dependable Auto Shippers, Inc.*, Civ. A. No. 12-3722, 2013 WL 247285, at *4 (E.D. Pa. Jan. 23, 2013) ("Party witnesses or witnesses who are employed by a party, on the other hand, have little impact on the 'balance of convenience' analysis since each party is obligated to procure the attendance of its own employees for trial."). Defendants do not identify specifically any significant non-party witnesses whose attendance at trial could be compelled in Massachusetts but not New Jersey. Moreover, although defendants assert that the relevant documentary evidence in this case is at Ocular's Massachusetts manufacturing facility and headquarters, they do not contend that the information could not be produced in New Jersey. Accordingly, the factors relating to the convenience of witnesses and the location of evidence are neutral.

Overall, the private interests in this action strongly favor transfer to the District of Massachusetts. The plaintiffs' original choice of this forum, which is entitled to little deference in this securities class action to begin with, is neutralized by New Jersey resident Gallagher's consent to transfer of the action to Massachusetts. The convenience of the parties, the defendants' preference and the place where the claims arose all favor transfer to Massachusetts. The only relationship of this action to New Jersey, the residence of plaintiff Gallagher, is not a basis to retain the action here in the face of these significant countervailing interests.

### 2. Public Interests

Turning to the public interests relevant to the transfer analysis, those that apply favor transfer to Massachusetts. The practical considerations affecting the expense and expedition of trial strongly favor transfer, for many of the reasons detailed above with respect to the private interests. It would be more efficient for this action to proceed in the District of Massachusetts, where all of the defendants may be found, many non-party Ocular witnesses reside or work, the claim arose, and the underlying FDA inspections occurred. The District of Massachusetts also has a stronger interest in adjudicating these actions, for the same reasons. *See LG Elecs., Inc.*, 138 F. Supp. 2d at 592 ("The location where the claim arose is also a public interest factor because local judges and juries are preferred arbiters of events in their jurisdiction and community.").

Finally, defendants submit evidence suggesting that the District of Massachusetts suffers from less docket congestion than the District of New Jersey, and Ramadan concedes that this factor favors transfer, while asserting accurately that this is not of significant weight in the transfer analysis. (ECF Nos. 27-1 at 8-9 & n.4, 27-3 ¶ 2, 27-4).[6] Although

---

6    Defendants state that the relevant evidence suggests that in a twelve-month period

docket congestion is not a particularly important factor compared with the local interests of each forum, *see ML Design Grp., LLC v. Young Mfg. Co.*, Civ. A. No. 12-5883 (MAS) (TJB), 2013 WL 3049174, at *4 (D.N.J. June 17, 2013), it does weigh slightly in favor of transfer here.

The remaining public interest factors are either neutral or not relevant to this case. In summary, the private and public interests as a whole favor transferring these actions to the District of Massachusetts.

### IV. Conclusion

Therefore, for the foregoing reasons, **IT IS**, on this **27th** day of **October, 2017,**

**ORDERED** that defendants' motion is **GRANTED** and these actions shall be **TRANSFERRED** to the United States District Court for the District of Massachusetts.

*/s/ Leda Dunn Wettre*
Leda Dunn Wettre
United States Magistrate Judge

cc: Hon. Susan D. Wigenton, U.S.D.J.

---

ending on June 30, 2017, 13,140 cases were filed in the District of New Jersey and 3,697 cases were filed in the District of Massachusetts, roughly equating to 773 cases per district judge in the District of New Jersey and 284 cases per district judge in the District of Massachusetts. (ECF No. 27-1 at 9 n.4). This analysis assumes that there are 17 judgeships in the District of New Jersey and 13 judgeships in the District of Massachusetts, as stated in the chart from the Administrative Office of U.S. Courts that Defendants provided. (ECF No. 27-4).